JAMES PHILLIPS AND EMILY PHILLIPS, PLAINTIFFS IN ERROR, v. THE LIBRARY COMPANY OF BURLINGTON, DEFENDANT IN ERROR.

1. Mere permission to pass over dangerous lands, or acquiescence in such passage for the benefit or convenience of the licensee, creates no duty on the part of the owner, except to refrain from acts willfully injurious.

2. But the owner or occupier of lands, who, by invitation, express or implied, induces persons to come upon the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes, or at least to abstain from any act that will make the entry upon or use of the premises dangerous.

3. The gist of the liability in such cases consists in the fact that the person injured did not act merely on motives of his own, to which no sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used.

4. The liability of the owner or occupier of premises for their condition is only co-extensive with his invitation, and a person on private grounds by invitation of the owner, going of his own volition into other parts of the premises, exceeds the bounds of his invitation, and

if he does not thereby become a trespasser, goes out of his way to create a risk for himself. In this aspect of the case, evidence of the usual custom with respect to the parts of the premises into which persons were admitted who enter for the purpose for which the invitation was extended is competent to show the extent of the implied invitation.

5. A person entering premises of right or by invitation, expressed or implied, and using a path which for many years had been used with the acquiescence of the owner, is not precluded from recovering damages for an injury caused by a danger placed by the owner across the path, solely on the ground that the owner has provided another way that was safe and might have been used by the plaintiff. In such a case it is a question of fact whether the path taken by the plaintiff has, by its accustomed use, with the knowledge of the defendant, become a way which by its use and appearance indicated a way that persons so using the premises were *invited* to use.

On writ of error to the Supreme Court.

The defendants were owners of a lot of land fronting on Union street, in the city of Burlington, upon which they had erected a two-story building. The defendants used the first story for a public library and reading-room. The basement was let by them for school purposes and public exhibitions. The second story was leased to the Order of Red Men of New Jersey by a lease made in 1866, renewed in 1869, in 1871 and in 1874, with the understanding that another society would use the room on one night in each week to help pay the rent. Under this arrangement a society of Lady Masons occupied the room on Monday night of each week. The plaintiff became a member of the latter society in 1875, and was still a member when the accident occurred. The accident which gave rise to this suit happened on Monday night, December 7th, 1885.

On the rear of the lot and some distance behind the building, the defendants had erected a privy or water closet for use by persons having occasion to use the building for the purposes for which it was designed. Along the easterly side of the building was a brick walk to the rear end of the building and from thence a path leading to the water closet.

The entrance to the second-story rooms was from Union

street. On the easterly side of the building the lot for about twenty feet in width was not built upon, and on the street front of this lot the defendants had erected a fence, and at the extreme easterly end of the fence placed a gate for the admission of persons having occasion to use the water closet. From the gate there was a brick walk extending into the lot for a short distance, at the end of which, by turning to the left and going down a step, access might be had to the brick walk alongside the building. From the end of the brick walk, by the gate, there was a path leading diagonally across the grass plot to the rear of the building and there joined with the path to the water closet.

On the night in question, Mrs. Phillips attended a meeting of the Lady Masons, and, having occasion to go to the water closet, took the path diagonally across the lot, and fell into a well that had been excavated across this path by direction of a manager of the library company. The excavation was about eight and a half feet deep. It was commenced on Friday morning and completed on Friday afternoon about half past five o'clock, as the accident happened on the following Monday night, and was left open and unguarded, and was obscured by the shadow of the building from the light of the street lamp. Of the existence of the dangerous condition of this path Mrs. Phillips had no knowledge. For the injury she received this suit was brought, and at the Circuit a non-suit was granted. This writ of error brings up the propriety of that judicial action.

For the plaintiffs in error, *Charles V. D. Joline.*

For the defendants in error, *Mark R. Sooy.*

The opinion of the court was delivered by

DEPUE, J. By the record sent up in this case it appears that the non-suit was granted on the ground that there was no evidence that the defendants had knowledge that any of their licensees had been taking any other way across their lot

than that by the brick walk alongside the building, and that the plaintiff, having knowledge of the two ways by which she might go, one of which was established by the defendants and the other selected by herself, and having elected to go by the latter, is without remedy for the injury she received.

In *Vanderbeck* v. *Hendry*, 5 *Vroom* 467, the Supreme Court held that mere permission to pass over dangerous lands, or an acquiescence in such passage for the benefit or convenience of the licensee, creates no duty on the part of the owner except to refrain from acts willfully injurious. The premises on which the injury in that case happened were private grounds, used for a lumber yard, on which lumber was piled, leaving passageways between the piles for the convenience of loading and unloading. The yard was not enclosed, and persons were in the habit of passing through these gangways to go from street to street. The plaintiff, out of curiosity, went into one of the gangways and was injured by the falling of a pile of lumber which had been piled in a negligent manner. The court held that an action for such injury could not be maintained; that mere permission, or passive license to enter upon lands, relieved a person entering premises from the responsibility of being a trespasser, but that he enjoyed the license, assuming the ordinary risks of the nature of the place and the business carried on upon it. This doctrine was reaffirmed in *Matthews* v. *Bensel*, 22 *Vroom* 30. It was there held that an owner of land is not bound to fence dangerous machinery on his premises in favor of a mere licensee. All that may be said in favor of a mere licensee is that he is only not a trespasser, and the general rule of law is that the owner and occupier of private grounds is under no obligation to keep them in a safe condition for the benefit of trespassers, idlers, bare licensees and others who come upon the premises for their own convenience or pleasure, however innocent their purpose may be. 1 *Thomp. Neg.* 303.

A different rule prevails where the entry or use of lands is of right or by invitation of the owner, as distinguished from an entry by mere license or sufferance. An owner of lands

who, by invitation, express or implied, induces persons to come upon his premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes, or at least to abstain from any act that will make the entry upon or use of the premises dangerous.

*Hounsell* v. *Smyth,* 7 C. B., N. S., 731, is the leading case illustrating the first of these propositions. The question arose upon demurrer to a declaration, which set out that the defendants were seized of a certain waste upon which was a quarry, situate between two public highways, that was worked; that the waste was unenclosed and open to the public, and that all persons having occasion to pass over the waste had been used and accustomed to go upon and across the same without interruption or hindrance from, and with the license and permission of the owners of the waste. The declaration further alleged that the defendants left the said quarry unfenced and unguarded, and used no means for protecting persons passing over the said waste land from falling into the said quarry. It was held that the declaration did not set out a legal cause of action. Williams, J., said : " Under these circumstances, the law imposes no duty upon the proprietors of the waste to fence the quarry, nor does it render them responsible to persons who may deviate from one or the other of the roads and stray upon the waste. * * * No right is alleged ; it is merely stated that the owners allowed all persons who chose to do so, for recreation or for business, to go upon the waste without complaint—that they were not churlish enough to interfere with persons who went there. One who thus uses the waste has no right to complain of an excavation he finds there. He must take the permission with its concomitant conditions, and, it may be, its perils. Suppose the owner of land near the sea gives another leave to walk on the edge of a cliff; surely, it would be absurd to contend that such permission cast upon the former the burthen of fencing."

*Corby* v. *Hill,* 4 C. B., N. S., 556, is the leading case on the second of these propositions. The suit was brought to recover for injuries sustained by coming in collision with a

stack of slates and materials placed by the defendant in a private road leading from the turnpike to the Hanwell lunatic asylum and to the residence of the superintendent. The jury found that the defendants had the consent of the owners of the property for placing the slates and materials there, and that there was negligence in leaving the stack without a proper light. The court held the action to be maintainable. Cockburn, C. J., said : " The proprietors of the soil held out an allurement whereby the plaintiff was induced to come upon the place in question ; they held out this road to all persons having occasion to proceed to the asylum as the means of access thereto.   *   *   *   Having, so to speak, dedicated the way to such of the general public as might have occasion to use it for that purpose, and having held it out as a safe and convenient mode of access to the establishment, without any reservation, it was not competent for them to place any obstruction calculated to render the road unsafe or likely to cause injury to those persons to whom they held it out as a way along which they might safely go."

Corby v. Hill was distinguished in Hounsell v. Smyth from the case then in hand in that, as was said by Williams, J., " in that case [Corby v. Hill] the defendant held out an inducement to persons to come upon the land by permitting it to be used as a means of access to his house, and, therefore, he was bound to warn persons so using the road of the obstruction which had been placed upon it."

The cases illustrative of the duty imposed upon the owner or occupier of lands to exercise care for the safety of persons coming upon the premises by his invitation, are quite numerous : *Chapman* v. *Rothwell, El., B. & E.* 168 ; *Indermaur* v. *Dames, L. R.,* 1 *C. P.* 273 ; *S. C.,* 2 *Id.* 311 ; *White* v. *Franet,* 2 *C. P. Div.* 308 ; *Smith* v. *Docks Co., L. R.,* 3 *C. P.* 326 ; *Wright* v. *L. & N. W. Ry. Co.,* 1 *Q. B. Div.* 252. They are classified in *Big. Torts* 697–701, and in 1 *Thomp. Neg.* 307–317. In this class of cases the words " invite," " allure," " induce," " leads," and words of like import, are used to characterize the conduct of the owner or occupier of lands

which shall impose this duty upon him. In *Bonnett* v. *Railroad Co.*, 102 *U. S.* 577, the court held that the owner of land who induces or leads others to come upon it for a lawful purpose, is liable in damages to them, they using due care, for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and he negligently suffered it to exist without giving timely notice thereof to them or to the public.

In *Heaven* v. *Pender*, 11 *Q. B. Div.* 503, 508, 512, Brett, M. R., commented upon the inaccuracy of the word "invitation," in its ordinary sense, when used to express the circumstances under which the owner of land incurs a duty in favor of persons coming upon it. The principle he deduced from the cases is, "that whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense, who did think, would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of another, a duty arises to use ordinary care and skill to avoid such danger." And after commenting upon the form of pleading suggested by Willes, J., in Corby *v.* Hill, speaking of the phrase "used by invitation," the Master of the Rolls said : "The real value of the phrase may be said to be that invitation imports knowledge by the defendant of the probable use by the plaintiff of the article supplied, and therefore carries with it the relation between the parties which establishes the duty." The proposition adopted by the Master of the Rolls was approved by Hawkins, J., in *Trussell* v. *Handyside*, 20 *Q. B. Div.* 359, 363. It was not concurred in by Lord Justices Cotton and Bowen in Heaven *v.* Pender, these justices placing their opinion in favor of the plaintiff's recovery on the ground that the dockowner, having provided the dock for the repair of vessels, invited all the persons coming there on the business in which the dockowner was interested, to use the dock and its appliances as incident to the use of the dock. To such persons they held that the dockowner was under an obligation

to take reasonable care that the appliances were in a fit state to be used.

In *Holmes* v. *N. E. Ry. Co.*, *L. R.*, 4 *Exch.* 254, a workman going into the private grounds of a railroad company to assist in unloading coal was allowed to recover damages for an injury sustained by the insecurity of a flagged path in the yard.   Channell, B., in expressing his judgment, said : " The real difficulty is not in ascertaining what the law is, but in applying it to the facts in the case.   I quite concur in the rule laid down by the cases, that where a person is a mere licensee, he has no cause of action on account of dangers existing in the place he is permitted to enter.   Now, in one sense the plaintiff was a *mere* licensee, and the word *mere* has a very qualifying operation." The learned judge then held that the fact that the plaintiff was upon the premises for the transaction of business " prevents the case from being one of a *mere* licensee." Cleasby, B., said : " The question of mere license does not arise ; for, as soon as you introduce the element of business, which has its exigencies and its necessities, all idea of mere voluntariness vanishes." This case was affirmed in the Court of Appeals.   *L. R.*, 6 *Exch.* 123.

In some of the cases the phrase " accustomed use " is employed or dwelt upon as indicative of the circumstances under which such a liability is imposed.   This expression in its broad sense is apt to be misleading, for it would apply to the case of an owner who suffers his land to lie waste over which the public, by his passive acquiescence, is permitted to pass and repass at pleasure ; a condition under which it is well settled that no liability is imposed on the owner for the safety of the premises.   Indeed, it is impracticable to lay down any precise rule, in set terms, which shall embrace all the cases within and exclude all the cases without the range of an owner's liability for such injuries.   The utmost that can be done is to state in general terms the controlling principle that the liability of an owner or occupier for the condition of his premises arises where the plaintiff was induced to make the use of the premises, in the course of which he sustained the injury sued

for, by express invitation, or by invitation to be implied from acts and conduct of the defendants. The gist of the liability consists in the fact that the person injured did not act merely on motives of his own, to which no act or sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used. *Sweeny* v. *Old Colony R. R. Co.*, 10 *Allen* 368, 374. The proof necessary to sustain an action of this aspect must be found in the circumstances of the particular case. In such cases, if there be evidence tending to show inducement or invitation, it becomes a question of fact for the jury whether the conditions exist under which a legal duty is imposed upon the owner of the premises to exercise care for the plaintiff's safety.

Granting that it appears that a plaintiff's entry upon premises was by the invitation of the owner, a question may also arise, whether, at the time the injury was received, the plaintiff was in that part of the premises into which he was invited to enter. The owner's liability for the condition of the premises is only co-extensive with his invitation. A person on private grounds by invitation of the owner, going of his own volition into other parts of the premises, exceeds the bounds of his invitation, and if he does not thereby become a trespasser, goes out of the way to create a risk for himself. *Sullivan* v. *Waters*, 14 *Ir. C. L.* 460; *Ivay* v. *Hedges*, 9 *Q. B. Div.* 80; *Batchelor* v. *Fortescue*, 11 *Id.* 474; *Zoebisch* v. *Tarbell*, 10 *Allen* 385; *Victory* v. *Baker*, 67 *N. Y.* 366; *Diebald* v. *P. R. R.*, 21 *Vroom* 478. In this branch of the case, evidence of the usual custom, with respect to the parts of the premises into which persons were admitted who enter the premises for the purpose for which the invitation was extended, is competent to show the extent of the implied invitation. *Gilbert* v. *Nagle*, 118 *Mass.* 278; 1 *Thomp. Neg.* 309.

A distinction is also to be observed between mere negligence to keep the premises in repair and acts of misfeasance, such as placing obstructions or dangerous pitfalls in a way which persons have been permitted to use with the consent of the owner or on his implied invitation.    In Corby *v.* Hill, Willes, J., said : " The question is, whether there is any legal remedy for a person lawfully using the road, to whom injury results from the act of a third person in negligently placing an obstruction upon the road.   I should have thought that the bare statement of the proposition was enough.   The defendant had no right to set a trap for the plaintiff.   One who comes upon another's land by the owner's permission or invitation has a right to expect that the owner will not dig a pit thereon, or permit another to dig a pit thereon, so that persons lawfully coming there may receive injury.   That is so obvious that it is needless to dwell upon it."   These remarks were made by the learned judge in connection with the observation that it had not been suggested that the defendant did not know that the road was likely to be used as the plaintiff used it, or that he gave notice of the obstruction to the persons who were accustomed and likely to use the road.   The same learned judge, in *Gautret* v. *Edgerton, L. R.,* 2 *C. P.* 370–376, said : " It may be, as in Corby *v.* Hill, that a person is responsible if he puts an obstruction on the way which is likely to cause injury to those who by his permission use the way ; but I cannot conceive that he would incur any responsibility merely by reason of his allowing the way to be out of repair."

In the case now in hand, the evidence that was in when the non-suit was granted showed these facts.   The water closet was built by the library company for the accommodation of its tenants and others using the building for the purposes to which it was applied.   Originally the entire lot was enclosed from the street by a fence extending across the front.   Access to the water closet might then be had by turning the easterly corner of the building and going along the brick walk at the side of the building.   Shortly after 1866

the fence was changed, the front of the building being left open to the street, and a fence was built in front of the side lot, from the corner of the building to the lands of the adjoining owner. At the extreme easterly end of this fence a gate was placed as a means of access to the side lot and to the water closet. This gate was kept locked to exclude the public. Complaint was made by the members of the societies about the gate being locked, and a key was furnished by one of the trustees of the library company to the janitor of the lodge-room, and the gate was unlocked by him every meeting night so that the members could use the privy. If the plaintiff, as a member of the society, was not entitled to use the water closet as of right, she was indisputably entitled to use it in virtue of the invitation of the defendants. Incident to such use was the right of access thereto.

The contention of the defendants is that a safe way to the water closet having been provided by them over the brick walk alongside of the building, the plaintiff took the path across the grass plot at her own risk. To sustain this contention the counsel quoted the remark of Martin, B., in *Bolch* v. *Smith,* 7 *Hurlst. & N.* 736, 745, that "inasmuch as there was another way by which the plaintiff might have gone, but voluntarily chose the one which was out of order, he has no right of action against the defendant." It will be observed that this remark of the learned judge was made in a case in which the danger that lay across the path the plaintiff chose to take was open and visible. In that case the workmen on a government dock were permitted to use water closets erected for their accommodation, and for that purpose to use certain paths across the dockyard. The defendant erected across one of these paths a revolving shaft partly covered with planks. The plaintiff, a workman, having gone along the path to the water closet, stumbled, and, on putting out his hand to save himself, his arm was caught in the shaft and injured. There was another path along which the plaintiff might have gone, but the one he used was more convenient. It was held that a suit for this injury could not be main-

tained.  In that case the accident happened in the daytime,
and it appeared that the shaft had been on that spot, covered
and uncovered, for five years.  The condition of the path and
its dangers were open and visible.  During the argument
of the case, Wilde, B., said : "If A. gives B. permission to
cross his yard in which there are several ways, and there is a
pit in the yard which is usually covered, but on a particular
night, it being uncovered, B. falls into it, I can understand
that. A. would be liable.  But if a hole has always been un-
covered, and B. in broad daylight walks into it, would A. be
liable?"  In delivering his opinion the same learned judge
used this language : "I will add that I do not mean to say
that if the defendant had made a hole in the yard, and had
covered it in a way that was insufficient, but which appeared
to be sufficient, he would not have been liable.  But here
there was nothing of that character.  The danger was open
and visible ; there was nothing which could be called a trap."

Bolch *v.* Smith decided the abstract legal proposition that
no duty devolves by law upon an owner of premises to care
for the safety of a mere licensee, who must take the condition
of the premises and its perils.as he finds them.  That decision
has no relevancy to the facts of this case.  The mere fact that
there is one way that is safe and another that the owner has
made unsafe does not, as a matter of law, determine the non-
liability of the owner for an injury sustained by the licensee
in using the latter.  In an action by a passenger against a
railway company for an injury received in leaving a passenger
station, this court has held that a passenger using a way from
a railway station, which, by the recognition and assent of the
company, was apparently held out as a passageway for the
entrance and exit of passengers, is not concluded from recov-
ering damages for injuries sustained from the dangerous con-
dition of that way solely on the ground that the company
had provided another way that was safe, which the plaintiff
might have taken.  *Trautman* v. *Delaware, Lackawanna and
Western R. R. Co.,* 23 *Vroom* 169.  The case turns upon the
question whether the path taken by the plaintiff had, by its

accustomed use, with the knowledge of the defendants, become a way which, by its use and appearance, indicated a way that persons passing from the front gate to the water closet were "invited" to use.

After the change in the fence, in 1866, the passageway alongside the building became inconvenient to those going to the water closet through the front gate, and the evidence tended to show that, after this change in the fence, the brick walk alongside the building was to a great degree disused. One witness describes it as overgrown with weeds. Another witness, who seems to have been a member of the society from 1866, testified that she always used the path across from the gate in going to the water closet, and that she never used the brick walk alongside the building. Witnesses describe this path as "a beaten path," "a pathway that could be distinguished on the grass," "the beaten path," "about the usual way," "a footpath showing its marks upon the grass where it had been trodden," "a path that could be discerned by any one," "a pathway used regularly by members of the society whenever they wanted to use it for twenty years." The plaintiff, who had been a member of the society since 1875, testified that she had used the path many times to go to the water closet. The defendants, as a library company, occupied the first story of the building, and had charge and control of the building, except as the second story was let to tenants, and also had charge and control of the side lot. The evidence tended to show the continuous use of this path by the members of the society for many years as a means of access to the water closet, and that this use of the path was with the knowledge of the defendants. The society had been accustomed for many years to hold its meetings on Monday nights. and it is a legitimate inference from the evidence that the time of these meetings was known to officers and employes of the company, whose knowledge is imputable to the defendants. The well was dug by the direction of an officer who seems to have had charge of the building and grounds. It was a danger placed in the path—"something in the nature

of a trap." It was left unguarded in the nighttime, when there was reason for the supposition that the path might be used by the members of the society.

On this evidence we think there should not have been a non-suit. The judgment of non-suit should be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Abbett, Depue, Dixon, Lippincott, Magie, Reed, Van Syckel, Bogert, Clement, Smith.   12.