OWEN HAMMILL v. THE PENNSYLVANIA RAILROAD COMPANY.

1. When the facts are undisputed, the character of a way used by the public, whether it be a way by dedication, prescription or one which the public has been expressly or impliedly invited or allured to use, is a matter of law, and can be determined as such by the court, upon the trial of the question whether the owner of the premises on which the way exists is bound to abstain from any fact or act which will make entry thereon or the use thereof dangerous.

2. Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if such intervening causes were set in motion by the original wrongdoer.

3. Where a railroad company permits a well-defined footway to be established by such use as the public desires or chooses to make of it, as a convenient footway over their property and alongside a railroad bridge of such company, to and from a passenger station, and had separated such way, by a fence, from the tracks, so that it was not subject to the risks and incidental dangers of the railroad—*Held*, that the railroad company by such conduct had exhibited an intention that the footway should be used by the public, and that by such manifestation had induced and allured the public to its use, and that anyone using the way within the purpose manifested was entitled to be protected from dangers to the way resulting from want of ordinary care by the railroad company.

On rule to show cause why verdict should not be set aside.

Argued at November Term, 1893, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE, GARRISON and LIPPINCOTT.

For the plaintiff, *Cortlandt & Wayne Parker.*

For the defendant, *Vredenburgh & Garretson.*

The opinion of the court was delivered by

LIPPINCOTT, J. This was an action by the plaintiff against the defendant to recover damages for injuries occasioned by the alleged negligence of the defendant. The plaintiff contended that the proximate cause of the accident and consequent injuries to him was the neglect of the defendant, the railroad company, to give the statutory signal of the approach of its train towards the crossing over the railroad tracks at First street, in the town of Harrison, in the county of Hudson.

The plaintiff, at the time of the accident to him, was standing on a much-used path, on the property of the defendant, close to and running parallel with the railroad track of the defendant, extending from the railroad crossing of First street, in the town of Harrison, connecting with a footwalk at the railroad bridge over the Passaic river into Newark, then again by a path alongside and about parallel with the railroad tracks into Centre street, to the Centre street station of the defendant's railway. It was alleged in the evidence, and this was a subject of some considerable dispute, that no signal, either by blowing the whistle or ringing the bell, was given by the defendant of the approach of the train to the crossing at First street, and that another man by the name of Barry, carrying a box of tools on his shoulder, negligently and carelessly went upon the crossing at First street and was struck by the locomotive and killed, and some of the tools, by the force of the collision, were thrown with much violence against the plaintiff, injuring him severely.

These, with other undisputed facts, show that First street, in the town of Harrison, running in a northerly and southerly direction, crosses the railroad of the defendant at grade. From First street the grade of the natural surface of the land descends to the Passaic river, and over this space the railroad, which is a single track, is laid upon an embankment; along the north side of this embankment there is a paved street, but this street connects with no bridge over the river. On the south side of the railroad bridge across the river the defendant had constructed a footway leading from Newark over the river and into the town of Harrison, and separated by railings, &c., from the other portions of the bridge. This footway had been for over twenty years used, with the knowledge of the defendant company, openly and notoriously, by all persons desirous of crossing over the Passaic river at that point. From the Harrison end of this footway on the bridge to First street, on the railway embankment, on the south side thereof, either the defendant had constructed a well-marked path leading to First street or else the public using the same had trodden a footpath there. Between this path and the other portion of the railroad embankment the defendant had erected a picket fence extending from the bridge to First street, thus completely separating this path from the railroad track. At the Newark end of the footway of the bridge there existed another path, either constructed by the defendant or made from use by the public, leading from the footway of the bridge to Centre street, in the city of Newark, and from thence along the sidewalk of Centre street to the Centre street station, a regular passenger station of the defendant railway.

The evidence is undisputed that this way throughout its entire extent, from First street, in the town of Harrison, to the Centre street station, in Newark, had been in constant public use for over twenty years. In fact, it is shown that it had been in constant public use ever since the railroad bridge was erected, over forty years ago, and that such use had been with the full knowledge, acquiescence and consent of the rail-

road company. The evidence shows that thousands pass along it and over the footway every day on their way between the town of Harrison and the city of Newark, and on their way to and from the Centre street station of the defendant railroad. In fact, there appears to be no dispute that these footpaths and footway over the bridge connect the town of Harrison with the Centre street depot of defendant's company, and that this way is used to reach this depot from the town of Harrison, as well as a regular way connecting the town of Harrison with the city of Newark.

The accident which caused the injuries complained of to the plaintiff was occasioned by a train of the defendant approaching from an easterly direction toward the crossing at First street. As it approached the crossing the plaintiff was, with a companion, passing along the path from First street to the footway on the bridge, to cross over into Newark. He stopped a moment, and was, with his friend, watching the approaching train. As the train approached First street, Barry, who had a box of tools on his shoulder, went hurriedly upon the crossing at First street, in front of the train, and was killed. The box of tools was struck by the engine; some of the tools were propelled over the picket fence along this path and struck the plaintiff, and thus he received his injuries. These facts all appeared in the evidence of the plaintiff and appear to be the undisputed facts in the case. The evidence on the part of the plaintiff was that neither the bell on the engine was rung nor was the whistle sounded on the approach of the train to this crossing.

A motion to nonsuit was refused, and the evidence upon the part of the defendant was directed entirely to prove that the proper statutory signals were given, and to the question of damages, and at the close of the evidence a motion to direct a verdict was made upon the same grounds that nonsuit was requested and refused.

From the conceded facts in the case the character of this way became a conclusion of law, and both upon the motion to nonsuit and to direct a verdict for the defendant, the

learned trial judge held that as the defendant had separated this footway across the bridge, and the path approaching it from First street, from the other portions of its roadway by the erection of the rails and fence, so as to render it impracticable for the defendant to use it in connection with its general business, and that under all the facts the defendant had notified such of the public as used this way that it was not subject to the risks and incidental dangers of the traffic of the railroad, and had made a designation of these portions of the bridge and path to the use of the public, and that there was exhibited an intention and purpose on the part of the defendant that it should or could be used by the public, either as an access to their station or over their property, and that by that manifestation induced the public to its use, and that within the scope of the purposes so manifested the use of it was to be protected from dangers arising by reason of the want of ordinary care on the part of the railway company.

The trial judge so holding refused to nonsuit, or to direct a verdict for the defendant, leaving the question of negligence to the jury.

The conclusion reached as to the character of this way, as presented by this case, renders unnecessary the consideration whether it was subject to public use by dedication or prescription, two questions much discussed in briefs of counsel.

It is clear that the defendant maintained this way as a convenient and accessible footpath across the bridge and along their embankment, for the purpose of communication between their station at Centre street, in the city of Newark, and the town of Harrison. There is no denial of this conclusion anywhere in the evidence. There is no evidence that this footway was devoted exclusively to the use of their workmen. It may be that, in the beginning, the public at either end of the footway across the bridge took such path as it chose in order to reach First street, in the town of Harrison, or to reach Centre street station, or the streets in the city of Newark, but in a very little time the footpath at either end became well defined by public use, and became so well recognized

that the defendant separated it from their tracks, as shown in the evidence, devoting it to such use as the public desired to make of it, to such of the public as chose to use it, in going to and from this station in Centre street, or to such of the public as chose to use it as a convenient footway to cross the river. It is in proof, undisputed, that on the Newark side of the river at this point there is a dense population, and that at the other end of this path, in the town of Harrison, there is quite a settlement, with the principal part of the town but a short distance away, and that this was by far the most convenient method of reaching the town of Harrison from this station. This way was a distinctive advantage to the defendant, and it is apparent that the public were distinctly invited to use it, and that such invitation was general in its character.

Therefore, there existed no necessity, in order to fix liability for want of ordinary care, to conclude that this was a public way either by dedication or by prescription.

The trial judge concluded that although there may not have existed a public way by prescription or dedication, yet the defendant, as the owner of the premises over which the way passed, had exhibited an intention that it should be used by the public, and by that manifestation had invited, induced or allured the public to its use, and that the plaintiff, using it within the scope of the purpose manifested, was entitled to be protected from dangers to the way resulting from want of ordinary care. This principle is now firmly established in this state. It was indicated in *West* v. *New Jersey Railroad and Transportation Co.*, 3 *Vroom* 91, and distinctly held in *Vanderbeck* v. *Hendry*, 5 *Id.* 467, and the liability is based " on a purpose manifested on the part of the owner that a way shall be used by the public, and the same is held out as a means of access to a house, store or other passage through lands, and the public or such as have occasion are expressly or impliedly invited to use it according to the purpose intended." 1 *Thomp. Neg.* 307, 308, 309.

This whole subject has recently undergone extensive treatment in the Court of Errors and Appeals of this state in

*Phillips* v. *The Burlington Library Co.*, 26 *Vroom* 307. In that case the leading authorities are reviewed, and the doctrine stated by Mr. Justice Depue is that mere permission to pass over dangerous lands, or acquiescence in such passage for the benefit and convenience of the licensee, creates no duty on the part of the owner, except to refrain from acts willfully injurious. But the owner or occupier of lands who, by intention, express or implied, induces persons to come upon the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes, or at least to abstain from any act that will make the entry upon or the use of the premises dangerous. The gist of the liability in such cases consists in the fact that the person injured did not act merely on motion of his own, to which no sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used.

The conclusion reached is that the trial judge committed no error at all in withholding from the jury the determination of the character of the way on which the plaintiff was at the time of the accident, and instructing the jury upon the undisputed facts that the plaintiff was not guilty of contributory negligence because of his presence there, nor because of his standing in the way at the time of the accident.

The question whether the defendant company neglected the statutory signals upon approaching the crossing at First street, where Barry was struck, was a disputed one, as a matter of evidence. Some of the witnesses affirmed that no signal whatever was given, others said they did not hear it, whilst the engineer and fireman testify that the bell was rung the required legal distance from the crossing and kept ringing until the crossing was passed. This question was properly submitted to the jury, and the jury instructed that if they

found the bell was rung as required by the statute, then no negligence on the part of the defendant company was proven, and no recovery could be had. Upon the evidence as presented in this case it is not competent here to determine that the finding of the jury on this subject was not fully justified. This being a pure question of fact, especially within the province of the jury to determine, a mere difference of conclusion on the part of the court would not be sufficient to nullify the verdict of the jury.

But it is contended that this negligent conduct of the defendant, conceding it to exist, was not the proximate cause of the injury. The contention is that the negligence of Barry, in placing himself carelessly in front of the locomotive, with the box of tools on his shoulder, was the independent and proximate cause of the injury. It is true that Barry's negligence contributed to his own death, and the trial judge instructed the jury that his negligence tended to the production of the injury received by the plaintiff, and that if Barry's negligence stood alone as an independent cause of the injury, there could exist no right of recovery on the part of the plaintiff, but it was submitted to the jury whether the statutory signal was given or not, and if not given, that was negligence on the part of the defendant, and if it co-operated with the negligence of Barry in producing the injury of the plaintiff, a right of recovery existed, but if it did not co-operate with the negligence of Barry in producing the injury to the plaintiff, then no right of recovery in the plaintiff existed; if the injury was the result of the joint negligence of the defendant and Barry, a liability on the part of the defendant ensued.

It is premised that this was a proper submission to the jury upon the evidence in the cause, and that the law as applicable was properly stated to the jury. It was not within the province of the court to assume that statutory signals were given, nor upon the assumption that they were not given to say that this negligence did not co-operate with the negligence of Barry and thus produce the injury to the plaintiff. The result might

have been, if the signal had been given, that the accident might not have happened to the plaintiff.

It would perhaps be unprofitable to any very great extent to enter upon any examination as to the almost infinite number of cases upon this subject of causal connection, proximate cause, combined and concurrent causes, or intervening efficient causes. If there could be deduced from them the very best possible expression of the rule, it would remain after all to decide each case largely upon the special facts belonging to it, and often upon very nice discriminations; the border line at which natural sequence ceases to exist and becomes unnatural is, it seems to me, extremely difficult to determine. In this case the jury found no signal was sounded, and that was negligence on the part of the defendant. Had it sounded, what would have been its effect upon Barry? It might have resulted in an avoidance of his neglect in going upon this track. We look for the primal negligence contributing to the injury, and then follow it up to its natural consequence and ascertain whether any independent efficient cause intervened to produce the injury, and it must be generally left to the jury to determine according to the circumstances of each particular case whether the facts fit the standard of naturalness. *Louisiana Mutual Insurance Co.* v. *Tweed,* 7 *Wall.* (*U. S.*) 44; *Harrison* v. *Berkley,* 1 *Strobh. L.* 525; *S. C.,* 47 *Am. Dec.* 578. The cause need not be the only cause, or the most proximate. *Bish. Rights & Torts,* §§ 450, 455. In the squib case the first thrower was held liable. *Scott* v. *Shephard,* 3 *Wils.* 403. An injury to a passenger, occasioned partly by defect in structure of highway and partly by ice, the parties responsible for the defectiveness of the highway were held liable. *Atchison* v. *King,* 9 *Kan.* 550. It often happens that an injury is brought about as the result of a long chain of happenings, when it becomes exceedingly difficult to trace the effect to its real proximate cause; it becomes a question entirely for a jury. *Shearm. & R. Negl.,* § 25. In the application of the maxim *"In jure, non remota causa, sed proxima spectatur"* there is always more or less difficulty, and attempts are frequently made

to introduce refinements that would not consist with the principles of rational justice. The rule may be adopted that the efficient and predominating cause in producing a given event or effect, though there may be subordinate and depending causes in operation, must be looked to in determining the liabilities of the parties concerned. *Baltimore, &c., Railroad Co. v. Reaney,* 42 *Md.* 117, 136.

The rule may be said to be that the negligence to render the defendant liable must be *causa causans* and not merely *causa sine qua non.* Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes,. if such intervening causes were set in motion by the original wrongdoer. 2 *Thomp. Negl.* 1063, and numerous cases cited in the note. And when it has been once determined that there is negligence, the person guilty of it is equally liable for the consequences, whether he could have foreseen them or not. *Smith* v. *London, &c., Railway Co., L. R.,* 6 *C. P.* 14; *Beven Negl.* 81. It is sufficient if the probable consequences occur. *Milwaukee, &c., Railroad Co.* v. *Killogg,* 94 *U. S.* 469, 475.

The direct cause of the injury to the plaintiff was put in operation by the force of the engine of the defendant, which had approached this crossing in a negligent manner, without any statutory signals, and which continued until the injury; and injuries directly produced by instrumentalities that are put in operation and continued, are proximate consequences of the primary act, though they may not have been contemplated or foreseen. The relation of cause and effect between the primary cause and the injury is established by the connection and succession of the intervening circumstances, all of them perhaps neglectful in their character and contributing to the injury.

The case of *Smith* v. *London, &c., Railway Co., L. R.,* 6 *C. P.* 14, *Id.,* 5 *C. P.* 98, is a case very much in point. That was a case in which a cow was thrown by an engine, and the cow struck the ground, bounced and fell against the plaintiff..

380 NEW JERSEY SUPREME COURT.

Falk *v.* N. Y., S. & W. R. R. Co.     *56 N. J. L.*

The bounce and fall of the cow was the immediate cause, but it was merely incidental and was not an independent agency. As much so was the collision with Barry, or his box of tools, the undisputed cause of this injury to the plaintiff.

And it has been held in this state that in actions for injury resulting from fire, originating through the defendant's negligence, and communicated to the plaintiff's property, where distance and intervening objects, or the manner in which the fire was communicated, present the question whether the plaintiff's loss is attributable to the defendant's negligent act, and there being no intervening agency apparent which may stand in law as the immediate cause of the injury, the question is one for the jury, whether, under all the conditions under which the loss happened, the destruction of the plaintiff's property was a result that might reasonably have been expected, though not in fact anticipated, from the defendant's negligent act. *Delaware, Lackawanna and Western Railroad Co.* v. *Salmon,* 10 *Vroom* 299.

The question whether the negligence of the defendant was the proximate cause of the plaintiff's injury was, in this case, one for the jury to determine, and an investigation of the evidence leads to the conclusion that it was not determined wrongfully by them.

The award of damages in this case appears to be reasonable. The actual loss of the plaintiff exceeded $500, and his injuries were quite serious and to some extent permanent. The verdict of $2,000 is not excessive.

The rule to show cause must be discharged.