IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF·NEW JERSEY.

### NOVEMBER TERM, 1898.

------

### THE NEWARK ELECTRIC LIGHT AND POWER COMPANY v. SARAH McGILVERY, ADMINISTRATRIX, &c.

Argued November 9, 10, 1897—Decided November 7, 1898.

A company authorized to place wires in public highways, which wires it uses in its business to transmit an electric current which is dangerous, must exercise a high degree of care to prevent injury to any persons using the highways for passage; but to one who, with others, breaks down such wires and so exposes them uninsulated and dangerous, it owes no duty except to refrain from willful acts to his injury, and it will not be responsible for an injury received by him while handling the wires so broken, because it maintained or renewed the current passing over them.

------

On error to the Essex Circuit.

Before MAGIE, CHIEF JUSTICE, and Justices DEPUE, GUMMERE and LUDLOW.

For the plaintiff in error, *Richard V. Lindabury* and *Depue & Parker*.

For the defendant in error, *Samuel Kalisch*.

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.    This action was brought in the Essex Circuit by Sarah McGilvery, the defendant in error, and the widow and administratrix of John McGilvery, deceased, to recover damages from the Newark Electric Light and Power Company, the plaintiff in error, for causing the death of her intestate on July 22d, 1895, by its negligence. To a declaration charging negligence the company pleaded the general issue and a verdict was rendered in favor of the administratrix, and this writ of error was brought upon the judgment entered on that verdict.

The sole question presented by the assignments of error is whether there was evidence proper to be submitted to the jury upon the issue in the cause; if so, it was not erroneous to refuse to nonsuit or to direct a verdict for the company, upon which refusals exceptions were sealed.

In deciding this question we must attribute to the evidence such credibility and force as a jury might.

An examination of the evidence shows that the jury might find established the following facts, viz., that deceased, on the day of his death, was a lineman in the employ of the Consolidated Traction Company, and engaged with other of its employes, composing a gang in charge of a foreman, in taking down a "feed wire" belonging to that company from poles in a public street in Newark; that in taking down the feed wire it fell upon and broke a wire of the Electric Light and Power Company, which was strung upon the same poles and was used to furnish a current for electric lights, &c.; that the ends of the broken wire lost some part of their insulating cover and fell to the ground; that the end of it which was nearest the power-house of the company was tested and found to be dead, and was handled where the insulation was off with impunity; that deceased, at the direction of his foreman, immediately afterward took hold of that end of the wire with his bare hands and received a shock from an electric current, which caused his death within a few minutes.   These facts could be found upon direct evidence.   From the circum-

stances proved the jury might further infer and find that the breaking and exposure of the wire and its contact with the ground occasioned the melting of a " fuse " in the power-house of the company, whereby the current was cut off from the wire and it was left " dead," and that the current was thereafter turned on that wire by the insertion of another fuse by some employe of the company, and thereby the wire became dangerous to anyone who, standing upon the ground, should touch it where it had become uninsulated and exposed.

It was admitted on the trial that the electric company had authority to stretch wires upon poles in the public street in question, and to use them for conveying the electric current for light, &c. It did not appear to whom the poles belonged or what rights thereon the electric company and the traction company had acquired.

It is contended for plaintiff in error that upon these facts, which present the case most favorably for the administratrix, the verdict in her favor could not have been rendered, either because they show that deceased contributed to his death by his own negligence, or because they fail to show any negligence on the part of the company which charged it with liability to deceased or to his administratrix.

The contention that, upon the facts above stated, the contributory negligence of deceased so clearly appeared that the case should have been taken from the jury, cannot prevail.

It is true that deceased, from his experience and observation in his employment, must be deemed to have known the danger of handling a naked wire through which the electric current is running, and he did seize and handle this wire without the precaution of putting on India-rubber gloves. But if the evidence was believed he had just seen another person seize and handle the same wire in precisely the same mode, and without any injury. It was, therefore, plainly a question for the jury to say whether he might not reasonably infer that the wire was innocuous and whether his act exhibited a want of that reasonable care for his safety which was the measure of his duty. Whether the weight of evidence

should have produced a different response to the question cannot be considered on error.  On the facts which the jury might find, they could infer that deceased was not negligent.

The contention that, upon the facts, viewed in the light most favorable to the administratrix, the negligence of the company and its liability therefor to the deceased or to his administratrix, was not made out, presents a much more difficult question.

. Since liability in such a case arises only from negligence, and negligence in this respect can only be predicated upon the doing of some act by the company, which its duty to deceased required it not to do, or in refraining from doing some act which the like duty required it to do, it is obvious that a proper solution of this question requires a preliminary determination as to what duty, under the circumstances, the company owed the deceased.

Two observations may serve, I think, to give a clearer view of the real question thus presented.

In the first place it is plain that the company was in no possible sense responsible to deceased for the fall of the wire. Such companies using in business wires to carry a subtle and invisible power highly dangerous to life, must, although authorized to stretch such wires along poles in public highways, exercise a very high degree of care for the safety of those who may be thereby exposed to danger.  In that regard they owe a duty to everyone using the street in the ordinary mode, and if from insufficient supports or from causes which a high degree of precaution would have prevented, the wires fall in the street and do injury, they are doubtless responsible. But in this case the wire fell, not because of any act or omission of the company, but because deceased and those associated with him broke it down.  Whether the breaking was intentionally done or was produced by negligence or mere accident, the company is in no way responsible to those who broke it for any injury to any of them, at least for any injury which was the direct result of the breaking.

In the next place, the death of deceased was not the direct

result of the fall of the wire.   If the exposed end of the wire
had fallen upon deceased while it was still charged with a
dangerous current, and by such fall the current was passed
through his body to his injury, it would be impossible to find
any negligence chargeable to the company.   A like result
would follow if the wire, after the fall, continued to be charged
with the current and, upon his picking it up, the current was
passed through his body to his injury, at least until the com-
pany had some notice of the condition of the wire.   In each
case the injury would be attributable, not to the company, but
to those who by breaking the wire had made it a cause of in-
jury.   But in the case before us the jury might find, as we
have seen, that after the fall of the wire, it became inert and
innocuous and could be and was handled with impunity.   If
that be so, the death was the result of the turning on of the
current again by the insertion of the new fuse, and the ex-
posure of the wire occasioned by the fall was only the means
by which the injury was inflicted.

The real question therefore is, what duty devolved on the
company, under the circumstances, with respect to the inser-
tion of a new fuse and thereby renewing the current through
this wire?

The evidence does not make clear that the melting of the
fuse gave notice to the company that the wire was broken
and grounded, for the expert evidence is that such melting
might be caused by a short circuit resulting from a crossing
of the wires, as well as by the grounding of a wire.   Such
melting, therefore, only gave notice that one or the other cause
had operated.

To persons unconnected with the breaking of the wire and
using the street in the ordinary mode, I have no doubt the
company owed a duty to refrain from sending a current
through the wire until it was ascertained that it was safe to
do so.   But in my judgment one who had participated in
breaking down the wire cannot charge the company with that
duty until he has given it notice of the broken wire and its
being grounded.

If it could be claimed that, in the absence of proof that this current was carried on wires which might cross, the jury might find that the melting of the fuse gave notice that one of the wires was broken and grounded, a like distinction in the duty devolving on the company exists.  As to persons unconnected with the breaking of the wire and traversing the street in the ordinary way, its duty would be to refrain from turning on a current until it had been ascertained it was safe to do so.  But to one who, like deceased, had participated in breaking down and exposing the dangerous wire and who thereafter intermeddled with it, the company owed no duty except to refrain from willful acts to his injury.  The subsequent handling of the wire which was exposed by the breaking and fall, was a mere continuation of the act which had broken the wire and caused it to fall.  With respect to that wire, the gang of which deceased was one were either trespassers or at the most licensees, and the measure of duty to such is that above stated.  *Phillips* v. *Library Co.*, 26 *Vroom* 307.

The result is that the evidence did not justify the submission to the jury of the question of the company's liability, because it did not show that the company was guilty of breach of a duty which it owed to the deceased.  There should, therefore, have been a verdict directed for the company and for the refusal to direct such verdict the judgment must be reversed.