HELEN M. DEVOE, ADMINISTRATRIX, &c., OF BERTHA L.
DEVOE, DECEASED, DEFENDANT IN ERROR, v. THE
NEW YORK, ONTARIO AND WESTERN RAILWAY COM-
PANY, PLAINTIFF IN ERROR.

Argued March 7, 1899—Decided June 19, 1899.

Where the residents along a railroad track, which was enclosed by the
company with a fence, built a stile over the fence without the consent
of the company, in order that they might go directly across its tracks
to the railroad station and to the street beyond, instead of going around
by the public road—*Held*, that the acquiescence of the company in
such use of its premises created no duty on the part of the company
except to refrain from acts willfully injurious, and that the company
was not liable in damages for an injury sustained by such use of its
tracks resulting from the running of its trains.

On error to the Supreme Court.

Helen M. Devoe, as administratrix of Bertha L. Devoe,
deceased, brought suit against the New York, Ontario and
Western Railway Company. The deceased, a child nine
years of age, was struck on the 22d day of September, 1897,
by a train of the company while she was crossing the com-
pany's railroad track near Schraalenburg, and so injured that
she shortly afterwards died. This suit was brought under the
statute to recover damages for causing the death of the de-
ceased. At the trial the plaintiff recovered a verdict on
which judgment was entered, whereupon the defendant sued
out this writ of error. The errors assigned were upon excep-
tions taken to the refusal of the trial court to nonsuit, and
the refusal of the court to direct a verdict for the defendant
at the close of the case.

For the plaintiff in error, *Vredenburgh & Garretson.*

For the defendant in error, *John P. Stockton* and *Warren
Dixon.*

The opinion of the court was delivered by

DEPUE, J.   The deceased at the time she was struck was crossing the track of the railroad at a place which was not a public highway.   She was not using the place of crossing to go to the passenger-station ; she was on her way to school, intending to reach the street on which the school was situate by passing over the platform of the station.

The situation and circumstances as disclosed in the evidence were these : The passenger-station was on the south side of the railroad, extending out to a street called Courtlandt street, parallel with and some distance from the railroad.   On the northerly side of the railroad there was a highway known as the Milford road, which adjoined the company's grounds, and which turned and crossed the railroad about five hundred feet west of the station, and again about one thousand feet east of the station.   The company several years ago erected a wire gauze fence about five feet high on the line between its grounds and the Milford road, extending the entire distance between the two public crossings.   On that side of the railroad there were a number of dwelling-houses, occupied mainly by persons who had occasion to travel on the trains.   In one of these houses the mother of the deceased resided.   The proof was that about four years before this occurrence a stile, consisting of three steps on one side up to a platform and three steps down on the other side, was placed in this wire fence for the purpose of enabling persons to get over the fence and into the depot grounds.   This stile was on a line with the easterly end of the station.   It was placed there by third persons and at their own expense, for their own convenience in reaching the railway station, without the consent and notwithstanding the refusal of permission by the company.   There was a ditch along the fence at the foot of the stile, and there was no visible or beaten track across the company's grounds and no outlet to Courtlandt street except over and along the platform of the station.

On the morning in question the deceased left her mother's house to go to school.   Instead of going to the public cross-

ing where the Milford road passes over the railroad she went to the stile, crossed over it, and on her way across the company's tracks, just before she reached the platform of the passenger-station, she was struck by one of the company's trains.

The rules of law which control in this case have been settled by the decisions of this court. In Phillips v. Library Co. the propositions adjudged which apply to the facts of this case are : " *First*. Mere permission to pass over dangerous lands, or acquiescence in such passage for the benefit or convenience of the licensee, creates no duty on the part of the owner, except to refrain from acts willfully injurious. *Second*. But the owner or occupier of lands, who, by invitation, express or implied, induces persons to come upon the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes, or at least to abstain from any act that will make the entry upon or use of the premises dangerous. *Third*. The gist of the liability in such cases consists in the fact that the person injured did not act merely on motives of his own, to which no sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used." 26 *Vroom* 307.

Phillips v. Library Co. was cited and approved in *Hammill* v. *Pennsylvania Railroad Co.*, 27 *Vroom* 370, 376 ; *Turess* v. *New York, Susquehanna and Western Railroad Co.*, 32 *Id.* 314, 318 ; *Fitzpatrick* v. *Glass Co.*, *Id.* 378 ; *Delaware, Lackawanna and Western Railroad Co.* v. *Reich*, *Id.* 635, 645. By force of these decisions the law has been settled, and further discussion on that subject is unnecessary. The question presented is whether there was evidence bringing the facts of the case within the rule imposing liability on the owner of lands.

To maintain the liability of the company for this injury the plaintiff's counsel rely on the fact that this stile and crossing were used by the public for a crossing to the street on the other side of the station as well as for a way to the station for passengers. The evidence is that people crossed there all the time to get from one street to the other and to go to the station to take the trains. The deceased always went to school that way, for it was shorter than by the public road. To sustain the suit the counsel must make out of these facts an invitation to persons to use this crossing as the deceased was using it when she was hurt; for it is established law that use, even with the knowledge of the owner of lands, by sufferance, acquiescence or permission, creates no duty on his part, except to refrain from acts willfully injurious. The phrase, "accustomed use," when employed as indicative of the circumstances under which a liability is imposed, was declared in Phillips *v.* Library Co. in its broad sense to be misleading, in that it would apply to the case of an owner who suffers his land to lie waste, over which the public, by his passive acquiescence, was permitted to pass and repass at pleasure. The library company was the owner of a lot on which was a building, part of which was let for meetings of a society of which the plaintiff was a member. On the rear of the lot the company had built a water-closet for use by persons having occasion to use the building for the purpose for which it was designed. The plaintiff, in going to the water-closet at night, followed a beaten path and was injured by falling into an excavation that had been made by the company across the path. The company had constructed along the building a brick walk leading to the water-closet. From the end of the brick walk at the gate the path led diagonally across the grass plot to the rear of the building and there joined the brick walk. There was no controversy as to the fact that the plaintiff was invited to enter the premises and go to the water-closet. The contention was that, the owner having provided a safe means of access to the water-closet, the plaintiff followed the path at her peril. But the court held that evidence of

usual custom, with respect to the parts of the premises into
which persons were admitted who enter for the purpose for
which the invitation was extended, was competent to show
the extent of the implied invitation.    Another illustration of
the office of accustomed use is furnished by *Delaware, Lacka-
wanna and Western Railroad Co.* v. *Trautwein*, 23 *Vroom*
169.    In that case the plaintiff, a passenger on the defendant's
railway train, received an injury in leaving the depot grounds
by being struck by one of the company's trains.    She had
alighted from the cars on the platform of the station, and was
on her way across the tracks towards a stairway on the other
side which led to the street.    The stairway rested on the
embankment of the railroad.    It was built and kept in repair
by private persons residing in the neighborhood for their own
convenience as a means of access to and from the station, and
had been used by passengers generally.    The company had
provided another means of access to and from the station
which did not require persons to cross the tracks.    From the
depot building to the top of this stairway there was a gravel
walk, and the employes of the company testified that the
passage was kept free, open and unobstructed.    It was
apparently a way provided as a means of access to and from
the company's grounds.    The defendants were held liable for
these injuries.    But the decision was placed upon the duty of
a railroad company as a carrier of passengers to provide safe
means of access to and from its station for the use of pas-
sengers, and it was held that a passageway having the char-
acteristics mentioned became by the company's act a passage-
way which passengers were invited to use.

In *Turess* v. *New York, Susquehanna and Western Rail-
road Co., supra,* the Chief Justice distinguished an entry and
use by invitation from an entry and use by mere permission
in these words : " In the case of an implied invitation the re-
lation is imposed upon the owner or occupier of land only
when he has done something which justifies one who enters
upon his land and makes use of it or something upon it in
believing that he intended such use to be made ; and he who

makes such use can claim the relation only when he is justified by the acts or conduct of the owner or occupant in believing that such use was intended." It is also settled by the decisions of this court in the case last cited and in *Delaware, Lackawanna and Western Railroad Co.* v. *Reich, supra,* that no distinction exists between adults and infants when entering uninvited upon lands of another with relation to the duty which the owner or occupier of such lands owes to them.

Construing the evidence as favorably as possible for the plaintiff's suit, there are no facts and circumstances which could be construed as an invitation to the deceased to use the company's grounds for the purpose for which she was using them. There should have been a nonsuit. The defendant at least was entitled under the uncontradicted evidence to a direction in its favor.

The judgment should be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Collins, Depue, Garrison, Gummere, Lippincott, Van Syckel, Adams, Bogert, Hendrickson, Nixon, Vredenburgh. 13.