The Delaware, Lackawanna and Western Railroad Company, a corporation, and the Stange Construction Company, a partnership, entered into an agreement by which the latter was to construct for the railroad company a roadbed for new third and fourth tracks on the Morris and Essex division of the system, commencing at a point four thousand feet west of the Mountain Lake station in Moris county and extending westwardly about five miles to a point near Dover, in said county. The work included, in addition to the grading for the two additional tracks to be constructed, foundation excavations for the construction of a concrete arch ring with the necessary support to spring a bridge arch across the railroad tracks near a road known as Pear Tree road. The work of grading for the new tracks was all on the south side of the railroad company's two existing operating tracks. To the south of these operating tracks was an old retaining wall which presented a barrier between the operating tracks and the work of grading to be done by the Stange company. The operating tracks ran substantially parallel with the retaining wall, the eastbound track being nearest to it. At the place where the work was in progress on April 1st, 1927, there was located a bridge across the two operating tracks known as the Franklin bridge. On this day two steam shovels were being used in the prosecution of the work. One was known as the little shovel and the other as the large shovel. The little shovel was east of the Franklin road bridge. The large shovel was some four hundred feet eastwardly from the little shovel. The Stange company had in its employ one Timothy F. Sullivan. He was a timekeeper. His duties were to keep the record of the time spent by the men on the work and check up the equipment and materials used. Sullivan lived at Rockaway. On April 1st, 1927, he came from Rockaway in the morning by automobile. He left his car on the Franklin bridge. He then went on the railroad company's right of way between a retaining wall on the north side and the westbound track. He apparently reached the little shovel on the south side of the *Page 452 
eastbound operating track and was proceeding to the large shovel on the same side when he attempted to cross the operating tracks and was struck by a train and killed. There was no occasion for his crossing the operating tracks. The explanation of his action is that where the excavation was being made the ground was wet and muddy, and that in order to keep his feet dry he decided to cross the operating tracks. He could have crossed the operating tracks over the Franklin bridge. He was killed by a train being operated on the westbound track in the wrong direction.
His widow, Margaret M. Sullivan, was appointed administratrixad prosequendum and instituted under the Death act an action in the Morris County Circuit Court to recover damages for the death of her husband. The complaint contained eight counts. The second, fifth, sixth and eighth counts will not be referred to as it is admitted that the evidence submitted at the trial was inadequate to support them. The first count alleged the employment of the deceased by the Stange company, his connection with the work, the right and necessity of the deceased to walk along the tracks, the failure of the railroad company to warn the deceased of the approach of the train by bell or whistle, and the running of the train at excessive speed without observing the deceased on the track. The third count alleged the violation of certain rules and orders of the railroad company in operating its trains against the current of traffic. The fourth count alleged the failure of the railroad company to publish and enforce reasonable rules and regulations to protect the deceased, knowing that he was employed along and upon the tracks. The seventh count set up the failure of the defendant to warn, by signal from the approaching locomotive or a flagman stationed on the ground, the deceased of the approach of its locomotive on a double track when said locomotive was running against the current of traffic.
The answer of the defendant denied the allegations of each count. The answer also set up contributory negligence and that the plaintiff's decedent, who was neither connected with nor employed upon the railroad, was killed while walking *Page 453 
along the tracks at a place where said railroad was not laid out upon a public highway or at a private crossing, contrary to the statute.
At the conclusion of the trial the defendants' counsel moved for a nonsuit. The trial court, with great care, considered the motion and granted a nonsuit, basing it upon the ground that the deceased was at the time of being struck a mere licensee upon the railroad company's property, and as such the railroad company owed him only the duty of refraining from willfully injuring him, and there was no evidence of willful injury produced. From the judgment of nonsuit the plaintiff below has appealed to this court. The grounds of appeal briefly stated are that the trial court erred in holding that the relation between the deceased and the railroad company was that of a licensee, and not an invitee, and in refusing to submit to the jury the question of the defendant's negligence as alleged in the complaint. If the deceased was a mere licensee at the time he was killed it follows that the allegations of negligence set forth in the counts of the complaint referred to were properly withdrawn from the consideration of the jury.
During the progress of the trial the court admitted in evidence as a "neutral exhibit" the contract between the railroad company and the Stange company. A perusal of the contract makes it clear that the intent was that the Stange company should do the construction work without interference with traffic on the operating tracks. The agreement (section 13) provided that if any part of the work should be carried on in proximity to the existing operating tracks the Stange company should perform said work in such manner as not to interfere in any way with the operating tracks and the passage of trains thereover in accordance with the regular schedule. The Stange company was also to provide and pay a sufficient number of qualified watchmen to protect the tracks at such points. The agreement further provided that the Stange company should not block any operating track unless authorized in writing by the engineer. Forty-eight hours' advance notice of this was to be given the *Page 454 
railroad company. No operating track was to be used unless it was impossible to carry on the work without its use. Movements of cars on an operating track were forbidden unless handled by an engine and crew of the railroad company, for which the Stange company was to pay. It is impossible to read the agreement without reaching the conclusion that the construction work was to be prosecuted without permitting the use of the operating tracks by the Stange company.
Aside from the provisions of the agreement the deceased met his death when walking along or across the main operating tracks, at a time when the entire work was being done south of these tracks. A retaining wall separated the operating tracks from the place where the work was in progress. There was no occasion for Sullivan to go upon the operating tracks. There is no evidence, if he was accustomed to do so, that the railroad company knew of such a use of its operating tracks by Sullivan.
The position of the appellant is that Sullivan was an invitee upon the property of the railroad company and that the railroad company was under a duty to exercise ordinary care to render the premises reasonably safe for the purposes of Sullivan. Phillips
v. Library Co., 55 N.J.L. 307. From the facts hereinbefore stated, taken from the agreement and the circumstances of the accident, we are of the opinion that Sullivan was not at the time and place of the accident an invitee of the railroad company. As has been stated the operating tracks were to be kept in use for the regular traffic of the railroad company. Sullivan was under no necessity of going upon them. The construction work was being done on the south side of the operating tracks. Sullivan could have done everything he was required to do and kept off of the operating tracks. Assuming Sullivan was an invitee on that part of the premises in which the construction work was in progress, his status as an invitee was lost when he walked upon or attempted to cross the operating tracks. He then became a licensee. The railroad company owed him no duty except to refrain from acts willfully injurious. It has been frequently held that a person on private grounds by *Page 455 
invitation of the owner, going by his own volition into other parts of the premises, exceeds the bounds of his invitation, and if he does not thereby become a trespasser, goes out of the way to create a risk for himself. Carey v. Gray, 98 N.J.L. 217, contains the leading cases in this and other states upon this subject.
The testimony shows no act which can be said to have been willfully injurious to the deceased under the cases in this state defining willful injury. Staub v. Public Service Railway Co., 97 N.J.L. r97; Rose v. Squires, 101 Id. 438; affirmed,102 Id. 449. For these reasons we consider the nonsuit properly granted.
The judgment of the Morris County Circuit Court is affirmed.
For affirmance — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, McGLENNON, KAYS, DEAR, JJ. 12.
For reversal — None.