JAMES LEO FUREY, DEFENDANT IN ERROR, v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued November 28, 29, 1901—Decided March 3, 1902.

1. Implied invitation is part of the law of negligence by which an obligation to use reasonable care arises from the conduct of the parties; its essence is that the defendant knew, or ought to have known, that something that he was doing or permitting to be done might give rise, in an ordinarily discerning mind, to a natural belief that he intended that to be done which his conduct had led the plaintiff to believe that he intended. It is not enough that the user believed that the use was intended; he must bring his belief home to the owner by pointing to some act or conduct of his that afforded a reasonable basis for such a belief.

2. A railroad company occupied an enclosed shed upon a river pier in which it loaded and unloaded its freight trains, which, for this purpose, were broken in order that each car should stand opposite to one of the doorways in the side of the shed. Through one of the openings between two of the cars the plaintiff, who was filling a contract to paint the outside of the shed, attempted to pass and was caught by the closing of the train of which he had no actual notice, although the customary signal used on such occasions was given. *Held*, that no invitation to the plaintiff to make use of the opening between the cars as a passageway was implied, either from the existence of the opening, the use made of it by the employes of the company, or from the fact that such use had been made of it by the plaintiff and his co-servants without molestation; *held, also*, that the plaintiff could not complain that no notice other than the customary signal was given by the defendant before closing its train.

On error to the Supreme Court.

For the plaintiff in error, *James B. Vredenburgh.*

For the defendant in error, *James J. Furey* and *Charles C. Black.*

The opinion of the court was delivered by

GARRISON, J. This in an action for damages for personal injuries received by the plaintiff upon the property of the defendant. The property in question was an enclosed shed that covered the central portion of a river pier, and was occupied by longitudinal lines of railroad tracks, upon which freight cars were loaded and unloaded. While attempting to cross the southernmost of these lines, the plaintiff was injured by the coming together of two freight cars, between which he was about to pass. The cars were moved by the defendant without actual notice to the plaintiff. The plaintiff's contention is that the defendant should have given some signal of the proposed movement of the cars reasonably adapted to serve as a warning to him. This correctly states the plaintiff's right if he was using the opening between the cars as a passageway by the invitation of the defendant. The case therefore turns largely upon the question of invitation in its legal acceptation.

The plaintiff was a servant of a boss painter who was filling a contract with the defendant to paint the outside of its shed. He had been on this job about two weeks, and, at the time he was injured, was quitting work for the day. His errand in the interior of the shed was to exchange his working clothes for his street dress, which was on the second floor of the shed, and his purpose in passing between the cars was to reach a flight of steps at the west end of the building. He had been working outside upon the southeast corner of the shed. An accurate description of the premises and of the uses to which they were put by the defendant was given by the learned trial judge in his charge to the jury. I quote his language:

"You will remember the general structure of the pier. It was a projection something like seven hundred feet long into the water, and, I think, two hundred and twenty-five feet wide. It was covered by a shed, two stories high, with a lantern running its length in the roof. The shed was some three to four feet within the exterior line of the pier on each side, and along the extreme edge of each side ran a stringpiece. There was an uncovered portion of the pier on the east or river end, extending beyond the shed. A double-track railroad ran lengthwise through the centre of the shed, depressed, in a pit, as it was called, so that the floors of the cars were about on a level with the deck or floor of the pier; but on the south side of the pier, some four feet, more or less, inside the wall, there ran a track laid on the floor of the pier, the rails being four inches above the level of the floor. This track ran from the yard into the pier at this south side, and extended nearly to the end of the shed, entering the pier on a slight incline, and in front of the shed, planks were laid to make a level crossing over the rails. All along the south side of the pier there were openings with sliding doors, some twenty-two in number. Cars would be sent in on that south track and there unloaded into barges or other vessels moored alongside the pier in the water. The custom was to have the door of the freight car opposite one of the doors of the shed, so that goods could be transshipped directly from the car into the

vessel alongside. In the nature of things, owing to the unequal length of cars and the equal distances of the openings in the pier, there would have to be breaks in a train of cars as they were placed on this south track. At times, also, it was desired to truck freight across from the main floor on the north of this track over to boats moored at the pier, and to do that an opening between cars would be made by shifting cars along by hand or otherwise; and a bridging would be laid down across the tracks so that the freight could be moved over. The result was, as you will see, that in the ordinary course of business the train standing on this south track, which held eighteen cars in number if it was solidly filled, would be broken up with openings varying in their location for convenient use."

From this excerpt, two things are evident—*first,* that there was a way by which the plaintiff could have gone to and from his work without passing between the cars, and *second,* that the openings between the cars resulted solely from the exigencies of the business transacted on the tracks, and had no relation to their use as passageways over the tracks. The significance of this latter fact will be apparent when application is made of the correct legal rule to the case presented by this joinder in error.

At the trial a motion to nonsuit the plaintiff was made at the close of his testimony, and also at the end of the case, upon the grounds that the plaintiff was, at most, a licensee on the tracks of the defendant; that the danger to which he exposed himself was open to his observation, and that his injury was not the result of any negligent act of the defendant. These motions were denied and the jury was, in effect, instructed that an invitation to the plaintiff to use the opening between the cars as a crossing might be implied from the knowledge of the defendant's servants that such a use was being made of the openings by the painters, and that if the plaintiff had been so invited, it was for the jury to say what sort of a notice ought to have been given for his protection. The errors assigned upon the exceptions that were sealed to these portions of the charge present substantially the same questions as those that were raised by the refusal of the court

to nonsuit the plaintiff and may conveniently be considered in connection with them.

Upon the case thus exhibited the paramount question is not whether the plaintiff was upon the defendant's property generally by way of invitation, but whether, upon any aspect of the testimony, the defendant can be said to have invited the plaintiff to make use of the openings between the freight cars as crossings of the railroad tracks in its shed. For, as was aptly said by Mr. Justice Depue in *Phillips* v. *Library Co.,* 26 *Vroom* 307, 315, "the owner's liability for the condition of the premises is only co-extensive with his invitation." The case of *Diebold* v. *Pennsylvania Railroad Co.,* 21 *Id.* 478, is an illustration of this phase of the rule, which is neither an exception to nor a limitation of the general doctrine of invitation, but only a specific application of it. The same may be said of the so-called "turn-table cases," in so far as they are in line with the opinion delivered in this court by Mr. Justice Gummere. *Delaware, Lackawanna and Western Railroad Co.* v. *Reich,* 32 *Id.* 635.

The general definition of invitation originally given by Chief Justice Bigelow, in *Sweeny* v. *Old Colony and Newport Railroad Co.,* 10 *Allen* 368, and adopted by this court in the opinion delivered in *Phillips* v. *Library Co., ubi supra,* is in these words:

"The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be used." To which was added in original opinion the following:

"A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and

pass over his premises he thereby assumes an obligation that they are in a safe condition, suitable to such use, and for a breach of this obligation he is liable in damages to a person injured thereby."

The above definition is quoted with approval by Mr. Justice Magie in his opinion in *Turess* v. *Susquehanna and Western Railroad Co., 32 Vroom* 314, with the additional remark that such liability "is imposed upon the owner or occupier of land only when he has done something which justifies one who enters upon the land and makes use of it, or something upon it, in believing that he intended such use to be made; and he who makes such use can claim the relation only when he is justified by the acts or conduct of the owner or occupier in believing that such use was intended." Implied invitation, therefore, is part of the law of negligence by which an obligation to use reasonable care arises from the conduct of the parties; its essence is that the defendant knew, or ought to have known, that something that he was doing or permitting to be done might give rise in an ordinarily discerning mind to a natural belief that he intended that to be done which his conduct had led the plaintiff to believe that he intended. It is not enough that the user believed that the use was intended; he must bring his belief home to the owner by pointing to some act or conduct of his that afforded a reasonable basis for such a belief.

Applying these definitions and tests to the circumstances of the present case, it is incumbent upon the plaintiff either to show that the opening between the cars was, in fact, designed to be used as he used it, or else to bring home to the defendant some act or conduct signifying that the place was so prepared or adapted which might naturally lead the plaintiff to suppose that he might properly and safely so use it. For these purposes, three lines of proof are available—*first,* as to the openings themselves; *second,* as to the use made of them by the employes of the defendant, and *third,* as to the use suffered to be made of them by the plaintiff and his associates.

With respect to the openings themselves, it is an established fact that they resulted, not from design, but from the exi-

gencies of the business transacted on the pier, and that they varied from day to day with the physical conditions that gave rise to them, viz., the placing of each car opposite to a door in the side of the shed. The use of these openings by the stevedores and train hands employed about the defendant's business was not evidence of any expectation or willingness on the part of the defendant that persons not so employed should use the openings. The fact that the plaintiff and his co-servants had repeatedly, without molestation, crossed the track through the openings in the broken freight trains could not, in the absence of any sign of preparation or adaptation, have evinced to them that the openings were intended for their convenience, or that the general system from which the openings resulted was operated for their accommodation or had their safety in view. The character of the traffic and the obvious conditions that necessitated the breaking of the trains forbade such an implication in any ordinarily discerning mind. The plaintiff and his associates, by taking advantage of a constantly changing condition of things that evidently arose from causes unconnected with their presence upon the premises, could not impose upon the defendant a relationship to which it had, by no act of omission or commission, in anywise contributed. Knowledge is an element of invitation only when it is capable of throwing light upon the object with which a given use may have been permitted. Standing alone, it implies permission, but not invitation. Two cases decided in this court illustrate this distinction. In *Devoe* v. *New York, Ontario and Western Railroad Co.,* 34 *Vroom* 276, it was held that the open and notorious use for a number of years of a railroad crossing reached by a stile over a fence and on to the railroad's property did not impose upon the occupier of the land any duty other than that which arose from a permissive use. In *Delaware, Lackawanna and Western Railroad Co.* v. *Trautwein,* 23 *Vroom* 169, it was held that where a way by which passengers about to take its trains reached a railroad station had "by sufferance and use obtained such an appearance of a passageway passengers were invited to use, that persons of reasonable judgment and discernment would conclude

it to be a means of entrance and egress," the way would be deemed to be there by the "recognition, procurement or consent of the company, and would impose upon it the relation implied from such invitation." These cases aptly distinguish the mere knowledge of a use from its recognition as implying a co-ordinate obligation.

That the present case is wholly within the former of these classes is clear from several considerations—*first,* the condition of which the plaintiff took advantage was obviously part of an existing traffic system and presented no indications of being designed for any other purpose; *second,* the fact that there were on the ground none of the ordinary indications of a crossing, or any sign of preparation or adaptation to induce the belief that persons not there employed were either provided for or expected; *third,* the temporary and constantly shifting character of the openings between the cars forbade any reasonable person from assuming without further assurance that provision had been made for his safe conduct between the cars of the broken train.

If, therefore, it be assumed that the defendant knew that unauthorized persons were passing between its standing cars, it owed to them no other duty than "to refrain from acts willfully injurious to them." Whether the failure of the defendant to have given the customary signal before closing the train would have been a violation of this duty needs not now be discussed. The trial judge before whom the testimony was taken instructed the jury that there was no dispute that such warning was given—and this is the result of my examination of the case. The conclusion reached upon this branch of the case is that the defendant was not guilty of the breach of any duty that it owed to the plaintiff, and was entitled to the nonsuit for which it asked.

There is another aspect of the case in which, irrespective of the question of invitation, or, rather, upon the assumption that it had been given, the judgment for the plaintiff is legally invalid.

The danger to which the plaintiff would be exposed in attempting to pass between the standing cars was not only a

patent one, but its precise nature was obvious to him. It was that the opening might be closed without notice to him. To pass into such an opening with the understanding that no notice would be given of the movement of the cars would be the taking of a palpable risk; to engage in the same undertaking with a general expectation that some notice would be given, but without making inquiry as to its nature and extent, would be a scarcely less negligent act. Yet the plaintiff must be treated either as having taken the risk without inquiry, or else he must be charged with such information as inquiry upon his part would have elicited. Had he inquired he would have learned what the customary signal was and that no provision for any other notice had been made. The plaintiff must be deemed either to have inquired or not to have inquired. In the former case he would have learned what signal would be given, viz., the signal that was given. In the latter case he had no right to expect any notice, and hence cannot complain that he received none.

There is still another phase of the case upon which nothing needs to be said, excepting that no decision with respect to it is to be inferred from this opinion. I refer to the nature of the errand of the plaintiff in the interior of the shed as bearing upon the question of invitation. His object was to exchange his working clothes for his street dress. If this was "a matter in which the company had no concern," to use the words of Mr. Justice Gummere in *Fitzpatrick* v. *Glass Manufacturing Co.,* 32 *Vroom* 378, it may be that "he was saved from being a trespasser only by the fact that the company permitted him to come upon its premises for that purpose." The testimony upon this point in the event of a new trial may make it a court question, or may present it as one to be submitted to the jury.

The act entitled "An act to prevent accidents on railroads" (*Pamph. L.* 1869, *p.* 806; *Gen. Stat., p.* 2680, § 178), is not deemed to be applicable to the present case. The plaintiff was crossing the tracks of the defendant; he was neither walking on them nor standing nor playing on them, which are the conditions covered by that statute.

The judgment contained in this record is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, KRUE-GER, ADAMS, VREDENBURGH, VOORHEES, VROOM. 13.