## MARTIN GILL v. NATIONAL STORAGE COMPANY.

Argued June 8, 1903—Decided November 9, 1903.

Plaintiff was a laboring man in the employ of contractors who were doing work upon one of defendant's buildings. In order to reach the building he walked along a planked way that formed a crossing over several railroad tracks that were maintained upon defendant's premises. The crossing was a private way. The tracks were used in the drilling of cars in and about the business of the defendant, so that the crossing was sometimes blocked and sometimes left clear—the cars being moved over it frequently. No flagman or gateman was at any time kept at the crossing. No warning was customarily given of the backing of cars over it. Plaintiff had been employed upon the premises for several weeks, had used the crossing daily, and thereby had become familiar with it and with the drilling of cars over it. He attempted to cross on one occasion when cars were close to him on either side as he passed and in such position that he knew they were liable to be backed over the crossing. As he passed between the cars, those upon one side were suddenly and without warning pushed down upon him, so that he was caught between the cars and injured. *Held*, on the authority of *Furey* v. *New York Central, &c., Railroad Co.*, 38 *Vroom* 270, that he was not entitled to recover for injuries thus sustained.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and PITNEY.

For the plaintiff, *George W. Flaacke, Jr.*, and *Dean Emery* (of the New York bar).

For the defendant, *Collins & Corbin*.

·The· opinion of the court was delivered by· .   ,·

PITNEY, J. The defendant, a warehousing company having storage-houses at tidewater, maintains upon its property as a part of its plant a railroad yard, consisting of five tracks that run parallel with each other in an easterly and westerly direction a distance of several hundred feet, together with numerous switches, cross-over tracks and leaders to facilitate the drilling of cars in the prosecution of defendant's business. The storage buildings extend along and opposite to the southerly side of the railroad yard. Access from the public streets to these buildings is gained by means of a private way that enters the northwesterly part of de- · fendant's property, extends along the northerly side of the yard and then crosses the tracks at grade. This crossing is formed of planks twelve and a half feet in length, laid flush with the tops of the rails, so as to make a driveway twelve and a half feet wide, extending over the railroad tracks at right angles thereto.

Such was the situation at the time of the occurrence that gave rise to this action. Plaintiff was a laboring man in the employ of contractors who were doing mason work upon one of defendant's storage buildings. He had been so employed for six or seven weeks. He had used the planked crossing daily in going to and from his work. He had also become familiar with the accustomed use of the railroad tracks from daily observation. Freight cars were being so frequently drilled that, as the plaintiff himself testified, "they were always making up trains there; sometimes they would block the crossing and sometimes they would pull out and leave it clear; the cars were going back and forth continually; there was never any flagman or gateman there."

On the day in question the plaintiff was going on foot to his work, at or about ten o'clock. According to his story, he passed along the planked crossing in a southerly direction and saw cars on each side of the crossing. On reaching the third or fourth track, he found two cars standing on his left, the nearer of which occupied one-half of the planked

space, while on his right there were other cars upon the same track, distant about ten feet from˙ the car that stood .over the planking. He admits that he knew the cars on his right were liable to be backed down over the crossing. He says that he looked ·and listened; that he saw no engine and heard no signal, and thereupon attempted to pass between the cars, when those upon his right were suddenly and rapidly pushed down upon him, so that his arm was crushed be-tween the bumpers.

For the injuries thus sustained he recovered the verdict that is now under review. Manifestly, the gravamen of his com-plaint is that the defendant, having invited him to use the crossing, omitted to ·exercise reasonable care for his safety in that it caused the gap between the cars to be closed with-out warning to him.

As already shown, he knew that no flagman or gateman was at any time kept at the crossing. It is not asserted that warn-ing was ever given of the backing of cars over the crossing. The evidence introduced by defendant renders it clear that' no warning was customarily given.

We are unable to distinguish this case from that of *Furey* ·v. *New York Central, &c., Railroad Co.,* 38 *Vroom* 270, recently decided by the Court of Errors and Appeals, upon facts very much like those now presented. In the Furey case, it is true an audible signal was customarily given, preparatory to the movement of the cars, and such signal was given at the time Furey was injured; but as it was not adapted to· serve as a warning at· the place where Furey attempted to cross, and, in fact, was not heard by. him, it was for practical purposes the same as no signal at all. In· the opinion in that case (38 *Vroom,* at· *p.* 277·), Mr. Justice Garrison said: · .

"The danger to which the plaintiff would be exposed in attempting to pass between· the standing cars ·was· not only a ˙patent one, but its precise nature was obvious to him. It was that the opening might be closed without notice to him. To pass into such an opening with the understanding that

no notice would be given of the movement of the cars, would be the taking of a palpable risk; to engage in the same undertaking with a general expectation that some notice would be given, but without making inquiry as to its nature and extent, would be a scarcely less negligent act. Yet the plaintiff must be treated either as having taken the risk without inquiry or else he must be charged with such information as inquiry upon his part would have elicited. Had he inquired, he would have learned what the customary signal was and that no provision for any other notice had been made. The plaintiff must be deemed either to have inquired or not to have inquired. In the former case he would have learned what signal would be given, viz., the signal that was given. In the latter case he had no right to expect any notice, and hence cannot complain that he received none."

In our opinion, therefore, the defendant in the present case was entitled to a nonsuit or to the direction of a verdict in its favor, both of which were asked for on the authority of the Furey case.

The rule to show cause must be made absolute.