MARY ANNA DIECKMAN, ADMINISTRATRIX, PLAINTIFF
IN ERROR, v. DELAWARE, LACKAWANNA AND WEST-
ERN RAILROAD COMPANY, DEFENDANT IN ERROR.

Argued November 28, 1910—Decided March 6, 1911.

A railroad was built upon an embankment and crossed Stuyvesant
avenue by a bridge. The station of the railroad is situated east
of the railroad and near the avenue. To this station a stairway
ran from the street. On the opposite side of the railroad a path
started from the avenue, which had been worn by the feet of
persons passing from the street diagonally up the railway em-
bankment to the west side of the road. Along this side of the
railroad, along the top of the embankment, the company had
built a fence extending from the avenue to a point beyond the
line of the railroad station on the opposite side. Persons using
the path up the embankment had been accustomed to pass the
end of this fence and turn in on the two railroad tracks and
cross to the station. In front of the station the ground was
level to permit passengers to reach the cars upon the two tracks.
There was nothing to indicate a pathway across the tracks from
the westerly side. The plaintiff's intestate passed up the path
around the end of the fence and started to cross the tracks to
the station when he was struck by a train and killed. *Held*,
that the railroad company was not liable as the injured person
was on the tracks without invitation.

On error to the Supreme Court.

For the plaintiff in error, *Arthur Lovell*.

For the defendant in error, *Max M. Stallman*.

The opinion of the court was delivered by

REED, J. The plaintiff brought this action as the adminis-
tratrix of Edward Dieckman, who was killed while crossing
the tracks of the Delaware, Lackawanna and Western Railroad
Company at Lyndhurst station, on March 2d, 1909. There
are two tracks running upon an embankment and crossing
Stuyvesant avenue above grade. The station near Stuyvesant
avenue is upon the north side of these two tracks.

From Stuyvesant avenue a stairway leads up to the railway station and platform on the top of the embankment. The platform extends from the station building out to the northbound railway track, and between the northbound track and the southbound track the space is level with crushed stones so that persons can reach either track from the station.

On the westerly side of the railroad tracks there is no station building, no platform and no facility for a person to reach a train on either track. On that side of the railroad there runs a fence along the top of the embankment from Stuyvesant avenue bridge a distance of one hundred feet to where a mail catcher was placed.

This fence extended along the westerly side of the railroad to a point not opposite the station of the easterly side of the railroad, but to a point beyond.

At the bottom of the embankment on the west of the railroad there is a coal yard enclosed by a fence which runs along the foot of the bank. From the point where the coal yard fence reaches the sidewalk on Stuyvesant avenue there ran a path diagonally up the embankment to the mail crane. Persons living to the west of the railroad often, instead of crossing under the railroad on Stuyvesant avenue and climbing the stairway to the station, used this beaten path up the bank to the end of the fence and thence crossed the railroad to the station.

Mr. Dieckman, the deceased, on the morning of March 2d, 1909, started to take a train at this station and used the mentioned path up the embankment to the end of the fence and then proceeded to cross the tracks to the station. It was a misty morning, the deceased was holding an umbrella in front of him and before he had cleared the tracks he was struck by an express train and killed.

At the close of the plaintiff's case the trial judge directed a nonsuit.

The plaintiff in error insists that this direction was error. The insistence is that there was evidence from which a jury might have drawn the conclusion that the deceased was crossing the tracks by the invitation of the defendant and while so

crossing was negligently run down by one of defendant's trains. If it be true that there was a question whether the railroad had invited the deceased to use its tracks as a crossing, there was clearly a case for the jury.

The nonsuit must rest upon the proposition that there were no facts which could be construed as an invitation to the deceased to use the company's tracks for the purpose for which he was using them.

The path which led up to the tracks was not made by the railroad, but was worn by the feet of those who traveled along its line. Nor was it kept in repair by the company. It did not lead to a point opposite the station. The ability to cross the tracks directly from the west side to the station was destroyed by the fence erected by the railroad company. When the end of the fence was reached there was no indication of a path by the use of crushed stone or otherwise from the west side across the tracks to the station.

There was no physical indication that the public was invited to cross the dangerous interval between the mail crane and the station.

In the case of *Delaware, Lackawanna and Western Railroad Co.* v. *Traulwein, 23 Vroom* 169, the railroad was held to be liable for an injury to a lady who on leaving a train at night on her way to a stairway leading to the street fell over some timbers while crossing the railway tracks. The stairway was one built by private persons for their use in reaching the station.

But from the top of this stairway to the railway station there was a gravel walk and the employes of the railroad company testified that the passage was kept free, opened and unobstructed.

It was apparently a way provided as a means of access to and from the depot grounds of the company.

In *Devoe* v. *N. Y., O. & W. Ry. Co., 34 Vroom* 276, the plaintiff's intestate was killed while crossing the tracks of the company. The passenger station was on the south side of the railroad. On the northerly side was a road which adjoined the property of the railroad company. A fence divided the road

from the railroad grounds, but for several years a stile built by private persons existed by which persons could get over the fence into the depot grounds and so reach the station.

This stile was built without the consent of the railroad, but people crossed there all the time to go to the station to take trains and to pass to and from another road. The deceased was going to school and crossed the stile, and on her way across the defendant's tracks just before she reached the platform of the passenger station she was struck by a train and killed. There was no visible or beaten track across the company's grounds. It was held that there was no invitation to use the company's grounds.

These cases are concrete illustrations of conditions which will and which will not amount to invitations by a railroad company to persons to enter upon the perilous property of the company.

In the present case, we think there was nothing to indicate an invitation to the deceased to cross the tracks of the defendant.

Nor did the fact that such crossings by persons had theretofore been observed by the agents of the company without complaint or remonstrance involve any liability. A mere passive acquiescence by an owner in a certain use of his land by others involves no liability. *Sweeny* v. *Old Colony and Newport Railroad Co.*, 10 *Allen* 368; *Furey* v. *New York Central and Hudson River Railroad Co.*, 38 *Vroom* 270, 274.

The fact that the conductor of a train on some occasions held his train for persons coming up the path was no more than a passive recognition of the use of the path by persons wishing to take trains.

The judgment of nonsuit should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, JJ. 13.

*For reversal*—VROOM, J. 1.