27 N.J. Super. 227 (1953)
99 A.2d 201
LAURITZ I. GUDNESTAD, PLAINTIFF-RESPONDENT,
v.
SEABOARD COAL DOCK COMPANY, A FOREIGN CORPORATION, AND JOHN GERBA, JR., DEFENDANTS, AND PENNSYLVANIA RAILROAD COMPANY, A FOREIGN CORPORATION, DEFENDANT-APPELLANT. LAURITZ I. GUDNESTAD, PLAINTIFF-APPELLANT,
v.
SEABOARD COAL DOCK COMPANY, A FOREIGN CORPORATION, AND JOHN GERBA, JR., DEFENDANTS-RESPONDENTS, AND PENNSYLVANIA RAILROAD COMPANY, A FOREIGN CORPORATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1953.
Decided August 25, 1953.
*229 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. Arthur J. Sills argued the cause for Lauritz I. Gudnestad (Messrs. Wilentz, Goldman, Spitzer & Sills, attorneys; Miss Maria Denopoulos, on the brief).
*230 Mr. George F. Lahey, Jr., argued the cause for Pennsylvania Railroad Company.
Mr. Harry E. Walburg argued the cause for Seaboard Coal Dock Company (Messrs. Cox & Walburg, attorneys).
Mr. John A. Lynch argued the cause for John Gerba, Jr.
The opinion of the court was delivered by JAYNE, J.A.D.
Among its many transportational operations the Pennsylvania Railroad Company assembles in its yard at South Amboy, New Jersey, freight cars containing consignments of coal from the mines. At the estuary there is a dock at which the coal is transferred from the railroad cars into barges for delivery to designated ports. To facilitate the displacement of the coal from the cars into the hulls of the barges the railroad company maintains at the edge of the dock two separate units, each composed of consolidated trestles called "dumpers" over which the coal cars are moved in frequent succession to the required elevation. Although the sloping runways are straight, not spiral, the structures resemble in appearance the so-called scenic railways, or shoot-the-chutes, frequently observable at amusement parks.
In the use of each unit the practice is to "spot" the coal car on the track at the foot of the trestle, draw it by means of a "pig" up to the "tipple" or platform at the top, where the car is emptied. The empty car is there entrusted to the control of a brakeman of the railroad company. The car is "nudged" forward off the platform by the next car and by its gravitational impetus it travels along the downward slope of the trestle to the ground level and continues up the incline of another trestle known as the "kick back" until its momentum is either expended or is arrested by the manual operation of the brakes by the brakeman. Then it is permitted by the reverse gravitational impulsion to travel in the opposite direction back down the last-mentioned trestle to the ground level again, where a switch operates to deflect *231 the car onto a track leading to a section of the yard reserved for the accommodation of empty cars.
This performance in its entirety is not conducted solely by the Pennsylvania Railroad Company. The Seaboard Coal Dock Company in the capacity of an independent contractor takes charge of the loaded car at the foot of the trestle, operates the "pig" to draw it up to the "tipple" or platform, empties the coal from the car, and initiates the passage of the empty car down the declivitous section of the trestle. When thus started, the rider or brakeman, an employee of the Pennsylvania Railroad, assumes control of the further movements of the car.
Both units of this unloading equipment suffered damage in the catastrophic munitions explosion in South Amboy on May 19, 1950, and the repair and restoration of the premises were still in progress in July 1950 when the plaintiff, an employee of Walter J. Coleman, Inc., engaged in electrical construction, came there to perform the services of an electrician and continued to be employed there until the occurrence of his misfortune on September 13, 1950.
The weather was stormy on the day last mentioned. The plaintiff had completed his daily work and had deposited his tools in a small temporary shed then located near the line of railroad tracks which extend from the "kick back" trestle to the yard provided for empty cars. While undertaking to walk across this line of railroad tracks, he was struck by an empty freight car which, accompanied by a brakeman, was proceeding toward the yard. He sustained an injury which necessitated the amputation of his lower left leg.
Litigation was inaugurated by the plaintiff to establish the liability of the Seaboard Coal Dock Company, the Pennsylvania Railroad Company, and the brakeman, John Gerba, Jr., for the occurrence of the mishap and its injurious consequences. A trial ensued at which the jury exonerated the Dock Company and Gerba from liability and determined that the Pennsylvania Railroad Company was legally responsible for the plaintiff's injuries and his present and prospective losses, for which the jury awarded him $60,000 damages.
*232 A conformable judgment was entered, from which we have two appeals. The railroad company appeals from the judgment in relation to its liability, and the plaintiff appeals from that part of the judgment that absolved Gerba and the Dock Company from culpability.
In the consideration of these appeals it is judicious first to recognize the basic uncontroverted facts. The premises upon which the plaintiff sustained his injury, including the railroad tracks, the structures and the operative appliances thereon, were all owned solely by the railroad company. The Dock Company was an independent contractor engaged by the railroad company to perform the specific service to which reference has been made. The plaintiff was on the premises as an employee of the Coleman company only in pursuance of a contract between his employer and the railroad company. The mishap was not directly related to the employment of the Dock Company in raising the loaded car to the tipple and there unloading it. The brakeman who thereafter governed the movements of the empty car was the servant of the railroad company. The point on the railroad tracks at which the car collided with the plaintiff was not ostensibly designed or constructed by the railroad company as a crossing passageway for either vehicular or pedestrian traffic.
It is likewise expeditious initially to examine the plaintiff's alleged cause of action against the Dock Company. The first count of the amended complaint invokes the doctrine of respondeat superior, alleging that the car was negligently operated by the brakeman, Gerba, as an agent and servant of the Dock Company. The proof positively refuted the alleged existence of the relationship and the court accordingly dismissed that count of the complaint in its application to the responsibility of the Dock Company for the alleged negligence of the brakeman. We perceive no error in that judicial action. The second count alleges that the Dock Company "was in control of the operation of the coal docks on the premises" and "carelessly and negligently failed to take proper precautions for the safety of invitees on its *233 property by not having watchmen, signal devices or sound devices at proper places on the aforesaid property."
It is advocated by counsel for the plaintiff that the Dock Company, in supplying the initial mobilization of the empty car from the tipple, like the thrower of the squib in Scott v. Shepard, 2 W. Blacks. 892, is liable to any one ultimately injured by the consequential movements of the car. There is no essential analogy. The cause of action in the second count is obviously set up upon the factual premise that the Dock Company was in control of the docks and neglected "to take proper precautions for the safety of invitees on its property." The evidence more than adequately justified the conclusion that the Dock Company had no control whatever over the structures and certainly none whatever over that territory between the "kick back" and the storage yard upon which the plaintiff was injured.
Our attention, however, is attracted to the evidence disclosing that the Dock Company did in fact assign one of its employees to act as a watchman for the protection of the drivers of the motor trucks laden with cement at the place at which those vehicles crossed the railroad tracks leading from the "kick back," and supplied that service during the period of the day such deliveries were being made.
It is undoubtedly the established rule of law that one who in the absence of a legal obligation to do so voluntarily undertakes to render a service for the protection of the safety of another may become liable to him for the failure to perform or the failure to exercise reasonable care in the performance of that service, although the volunteer is not the owner or in control of the property with respect to which the service is to be performed.
But there are certain circumscriptions. It must be understood that the responsibility is only commensurate with the ambit of the voluntary undertaking and liability does not arise unless it appears from the evidence to a prima facie degree that the negligence had a proximate causal relationship to the occurrence of the injurious mishap.
*234 In the present case we are unable to discover any evidence that the Dock Company loaned the services of its employees for any purpose beyond that of protecting the safety of the drivers of the cement trucks, who were relatively unfamiliar with the premises as they passed over the railroad tracks on the roadway. Assuredly there was no proof that the Dock Company of its accord endeavored to forewarn all of the invitees of the railroad company at all points of the yard of the danger of being struck by a moving railroad car while crossing the tracks at a place convenient to them.
And then, additionally, the plaintiff frankly acknowledged that he never saw a watchman at the roadway, neither expected nor observed one there on the afternoon of the accident, and was not in any measure influenced or misguided by the absence of a watchman.
True, it is also a settled rule of law that an independent contractor, such as the Dock Company, engaged by an owner of lands to perform work thereon, is under a legal duty to exercise reasonable care for the safety of persons lawfully on the premises by reason of the owner's express or implied invitation. Bacak v. Hogya, 4 N.J. 417 (1950). The evidence does not inform us of the particular in which the Dock Company was remiss in the observance of that duty.
The trial judge accepted an exceedingly liberal interpretation of the evidence and submitted the alleged carelessness of the Dock Company to the jury for determination. The verdict upon that issue is in accord with the credible evidence. The portions of the court's charge relating to the duty of the Dock Company to which the plaintiff directs our attention were not materially prejudicial to the plaintiff. We are not persuaded that the judgment in favor of the Dock Company should be disturbed. It is affirmed.
Then we may logically infer from the verdict that the jury concluded that the brakeman, Gerba, was not guilty of any negligence in the management of the car which proximately contributed to the plaintiff's injury. The consideration of the conduct of Gerba in the existing circumstances *235 was appropriately delegated to the jury who discharged him from the accusation of the alleged dereliction of duty. Manifestly if Gerba was not remiss in the performance of his task, there was no negligence arising from his conduct legally to be imputed to his employer.
Derivative liability can only arise from primary liability, and so where a master and servant are sued jointly and the cause of action against the master is predicated solely on the tortious conduct of the servant, there cannot logically and legitimately be a verdict against the master where the verdict exonerates the servant from the commission of the alleged tort. Vaniewsky v. Demarest Brothers Co., 106 N.J.L. 34 (Sup. Ct. 1929), affirmed 107 N.J.L. 389 (E. & A. 1931); Prendergast v. Jacobs, 110 N.J.L. 435 (E. & A. 1933); Batts v. Joseph Newman, Inc., 3 N.J. 503 (1950).
Here, as in all such cases, it is our endeavor first to ascertain from the record whether the verdict of the jury can be rationally accommodated to the issues submitted for determination, and if it can, then to consider its propriety in the particulars challenged by the appeal.
In the present case it is observed that at the conclusion of the introduction of the evidence counsel for the plaintiff upon motion in pursuance of Rule 3:15-2 was accorded the privilege of amending the complaint and pretrial order to allege "that the defendant Pennsylvania Railroad Company carelessly and negligently failed to take the proper precautions for the safety of invitees on its property * * *." It is conspicuous that the amendment affixed to the plaintiff's cause of action another particular in which the railroad company is alleged to have negligently given occasion to the injurious occurrence.
Counsel for the railroad company argumentatively asserts that the allowance of the amendment enabled the plaintiff to initiate a distinctly different and new cause of action, the prosecution of which was inhibited by the statute of limitations. The amendment cannot, especially in consequence of our present liberalized practice, be so regarded. *236 An amendment will not ordinarily be deemed to state a new cause of action if the facts alleged show substantially the same wrong with respect to the same transaction, or if it is the same matter more fully or differently laid, or if the gist, the subject of controversy, and the object of the action in point of law remain the same. Russo v. Wright Aeronautical Corp., 1 N.J. 417 (1949).
An inquiry into this supplementary issue projected by the amendment therefore remains. We pursue it upon the basic premise that the railroad company, having by reason of its contract with the Coleman company impliedly invited the plaintiff to enter the yard and to make the required electrical repairs thereon, was under the duty to exercise ordinary care to render the premises reasonably safe for the purposes of the plaintiff's engagement. Sommer v. Public Service Corp., 79 N.J.L. 349 (Sup. Ct. 1910). But we must not ignore the principle that the owner's liability for the condition of the premises is only coextensive with the invitation. It was stated in the familiar decision in Phillips v. Library Co., 55 N.J.L. 307 (E. & A. 1893):
"* * * A person on private grounds, by invitation of the owner, going of his own volition into other parts of the premises, exceeds the bounds of his invitation, and, if he does not thereby become a trespasser, goes out of the way to create a risk for himself."
In its factual aspects the present case somewhat resembles that of Berley v. Eastern Coal Dock Co., 95 N.J.L. 517 (E. & A. 1921).
It is not proposed on behalf of the plaintiff that the defendant railroad company committed any acts willfully injurious to the plaintiff. The plaintiff's complaint is that the company neglected "to take proper precautions for the safety of" the plaintiff "by not having watchmen, signal devices, sound devices, or any protective devices whatsoever at the proper places with respect to the entire system of operation of the coal dumpers."
It must be immediately realized that a failure of the company to provide such protection at some places on its coal *237 dumping yard unrelated in cause to the occurrence of the plaintiff's misfortune does not of itself supply any legitimate foundation for the plaintiff's alleged cause of action. Assuredly the duty of the company for the injurious breach of which the plaintiff could recover must necessarily arise out of the invitation which the company had impliedly extended to the plaintiff in respect to his use of the premises.
Accordingly, in pursuing the attribution of the amendment of the complaint it became incumbent upon the plaintiff to prove an implied invitation by the company to him to cross the railroad tracks at the place where evidently for his own personal convenience he chose to do so. Such proof was essential in order to establish an obligation on the part of the company to exercise care to a reasonable degree for his protection and safety at that place. Cf. Devoe v. New York, O. & W. Ry. Co., 63 N.J.L. 276 (E. & A. 1899). A mere passive acquiescence by an owner in an occasional use of some part of his land by others does not burden the owner with the duty to exercise reasonable care to protect such users from injuries they might sustain in such permissive use. Remember, we are not now speaking of the care to be employed in the actual operation of the freight cars.
The obligation of the railroad company to exercise reasonable care for the safety of persons on its property, and its liability, like that of any other owner of land, inheres in the circumstance that the person injured thereon did not make use of the land merely for his own convenience but because he was induced by some act or manifestation of the owner to believe that his particular use of it was not only acquiesced in by the owner but that it was in accordance with the design and intention of the owner. Then, also, it does not suffice for the injured user to prove that he believed that the use he made of the property was intended by the owner; he must additionally disclose by his proof some act or manifestation of the owner that logically afforded a reasonable basis for such a belief. Phillips v. Library Co., supra; Furey v. New York Cent. & H.R.R. Co., 67 N.J.L. *238 270 (E. & A. 1902). A distinctly different idea has expression in the plaintiff's brief wherein it is stated that "The men were never told not to cross the tracks where the plaintiff attempted to cross, nor did the defendant's proofs show that it had no knowledge of this practice."
In these situations the legal significance of the discrimination between sufferance and invitation is substantial.
And so to some to the point, we fail to identify in the transcription of the evidence any competent proof which plausibly warranted an inference that the railroad company impliedly invited the employees of the contractors engaged in the making of the repairs to cross the tracks at that place and proceed beneath the trestle as a means of entrance and egress to or from their places of actual employment on the property. We reiterate that at the point along the tracks where the plaintiff attempted to cross there was nothing characterizing the obvious physical conditions from which persons of reasonable judgment and discernment would conclude that by the recognition, procurement, or act of the railroad company it was intended to be a passageway across the tracks for the accommodation of persons traveling about the property. Contrast, Delaware, L. & W.R. Co. v. Trautwein, 52 N.J.L. 169 (E. & A. 1889); Hammill v. Pennsylvania R. Co., 56 N.J.L. 370 (Sup. Ct. 1894); Dieckman, Adm'x., v. Delaware, L. & W.R. Co., 81 N.J.L. 460 (E. & A. 1911); Corson v. Atlantic City R. Co., 83 N.J.L. 517 (E. & A. 1912). Moreover, the plaintiff's employment did not contemplate his presence upon or near the track as in Albanese, Adm. v. Central R. Co., 70 N.J.L. 241 (E. & A. 1904).
The plaintiff conceives it to have been the duty of the railroad company to maintain watchmen or protective devices "at proper places." Nothing in the evidence other than the plaintiff's misfortune indicates that the place used by the plaintiff was a more appropriate place for such protection than other places along the many lines of tracks in the yard. However, in the circumstances of the present case we do not recognize the existence of any duty that legally devolved *239 upon the company regularly to maintain watchmen or signal devices at a point or points along the rails extending from the "kick back" to the section of the yard where the empty cars are assembled and over which tracks cars traveled at a very moderate rate of speed. It is also to be realized that the railroad tracks are within a private freight yard.
It had not been the custom or practice to give audible signals or other warnings of the passage of cars over those tracks and the plaintiff, knowing of none, did not expect or rely in any degree upon any such a premonition. Vide, Berley v. Eastern Coal Dock Co., supra. Cf. D'Agostino v. Pennsylvania Railroad Co., 72 N.J.L. 358 (Sup. Ct. 1905); Precodnick v. Lehigh Valley Railroad Co., 74 N.J.L. 566 (E. & A. 1907).
Our review of the evidence in all its aspects guides us to the conclusion that the plaintiff, traveling on foot, motivated by considerations of personal convenience, aware of the normal danger of crossing railroad tracks and conscious of the necessity of depending upon his own precaution, encountered his misfortune in the absence of any proven causative dereliction of duty on the part of the railroad company.
In appeal No. A-281-52 the judgments in favor of Seaboard Coal Dock Company and John Gerba, Jr., are affirmed. In appeal No. A-277-52 the judgment against the Pennsylvania Railroad Company is reversed. Since our determination is dispositive of the action, judgment is directed to be entered in favor of the Pennsylvania Railroad Company. Rules 1:4-9(b); 4:4-6.